Good morning. May it please the Court, I'm Scott Field, Assistant City Attorney for the appellant, City of Huntington Beach. The issue today before the Court is whether the Telecommunications Act can compel the city to lease property that the citizens of the city have decided not to make available. Counsel, I want to ask you a question about the meaning of Measure C that may or may not turn out to be relevant, but it's caused me some puzzlement. And that is Measure C restricts the construction of structures that cost over a certain amount on any golf course driving range, et cetera, excuse me, on any park or beach, now or hereafter owned or operated by the city. And what I'd like you to tell me about is what or operated means. In on-the-ground reality, are there any parks or beaches that are operated by the city but not owned by the city? Yes, there are. It's not this one. Well, the reason I'm asking is if the measure itself covers not only things that the city owns but also things that it operates, does that make the measure more than proprietary in the meaning of the proprietary exception to preemption? Well, Your Honor, the only situation I'm aware of where conceivably we operate a beach is we operate a portion of the state beach. But as a practical matter, that's a proprietary interest because it's a 20-year lease. But other than that, I'm not aware of any beaches or parks that we don't own. So let me just follow that through. So in your view, a property that is leased, as to which you are the tenant, I guess, would count towards the proprietary exception because it's... it's still acting as a proprietary. I mean... So you're acting as a sub-customer. You know, owning property for a 20-year period or a 15-year period or even a one-year period, it's still one element of ownership as part of the bundle of sticks. So your argument, if I could summarize it, is that nothing in this Act requires you to take property that you own and let somebody else use it. Of course not. The Act is very clear. The Telecommunications Act in 332C7 is only concerned with one thing and one thing only, and that's zoning decisions. Well, I understand that. But let me just... Does the Act impose on you, even if you're going to say no, the obligation of a quick response? Does 332C7, which seems to have very broad language, any request for authorization to place, construct or modify personal wireless service facilities within a reasonable period of time, does that require you, even with respect to your own property, to respond expeditiously to a request? Or do you read that as only covering zoning? I mean, there's nothing. If that was true, then that would impose such an obligation on everyone. And there's nothing in the Act to suggest anything like that. And there's nothing in the Act to suggest that cities are being singled out to make their property available for mobile phone antennas. Just following up on Judge Graber's comment about the market participant doctrine, when I look at the plain language of the statute, it does talk about regulations, which were regulatory. And usually in the market participant doctrine, the court is looking at whether it's a regulatory decision. But then in 3, I guess it's C7B323, it says, any decision by a state or local government or instrumentality thereof to deny a request to place, construct or modify facilities shall be in writing and supported by substantial evidence. So it's focusing on the decision, not on a general regulatory command, but on a specific decision. Why doesn't the plain language of the statute then apply to a decision that the city may make, even if it's on its own property, beaches, parks, whatever? Well, simply because 332C7, the very first title of that subsection is preservation of local zoning authority. The Act is concerned about the fact that cities may sometimes deny zoning approvals, land use approvals, to antennas. And it's one of the, frankly, one of the very few areas of law where district courts, federal district courts, have original jurisdiction to review land use cases. The only one I'm really aware of is ARLUPA. I'm sorry? ARLUPA, Religious Land Use and Institutionalized Persons Act. So the statute preserves that authority to the city, but it's subject to these exceptions, and the exception, this particular exception, applies to a decision. Well, but it's in the context of zoning decisions. In fact, when you go back to the en banc decision by the Ninth Circuit in Sprint versus County of San Diego, in that decision, the court very clearly held that these decisions that are to be reviewed are zoning decisions on a case-by-case basis. They are not to be applied to wholesale overrule a statutory scheme. Now, in this case, the effect of the court's ruling, the district court's ruling, is to say that referendum, which is a right preserved by the California Constitution and is reflected in the city's charter, is somehow or another antithetical to the TCA. But why can't we interpret that as just saying that when the city makes a decision, a decision about wireless facility placement, it can't rely on Measure C? If Measure C doesn't meet the standard of the federal statute. Because ultimately, and this is really the fulcrum of my critique of the district court's decision, is the city is the people. The idea that's, you know, the district court said, well, Measure C is chipping away at the city council's authority to make this decision, a decision that the city council thought was the right decision to make. True. But the point of the referendum right is that ultimately the people can exercise that authority. And that is exactly what happened here in Measure C in a context that has nothing to do with telecommunications. So how does – help me with the procedures in your city. A telephone company comes to you and says, we'd like to place a structure that costs over $200,000 on city land within this act. A park or a beach? Park or a beach. Park or beach. It's okay. We're going to say no, no, let's not. I get to make up the hypothetical. It's a park or a beach. And you say, well, that would be governed by Measure C, correct? Ultimately. Ultimately. How do you get from there to Measure C? In other words, they come to you and say, we'd like to use it. And you say, yeah. You say, well, eventually if you want to use it, the people are going to have to say yes in a vote. How do you get from there to Measure C? In terms of just step by step. Yeah. Does the council get to say, no, we're not even going to recommend it to the people? Does the council say, we'll put it on the ballot? Of course. Of course. Okay. So it first has to come to the city. The city council is going to negotiate, for example, if it's going to negotiate the lease. Right. And they have to negotiate the lease terms. They never come to lease terms. Okay. So the question I think may be a variant on the question that Judge Ikuda was asking you is, does the Act require the city to act expeditiously with respect to that request, even if the ultimate approval is left up to the voters? Expeditiously in terms of? Well, T-Mobile comes to you and says, we're going to build this enormous tower on the city beach. And you say, well, it's covered by Measure C. And they say, great, let's get this thing to the voters. Do you have any obligations under the Act in between those two points in time? No, Your Honor. I mean. You can say. I mean, it's negotiation. No, I understand. I mean, there's two parties that are coming to the table. I'm asking what the Act requires. Right. Your view is that the Act imposes no obligations on you at all. No. You can say, fine, we'll put it in the bottom drawer and we'll get to it when we need it. Right. I mean, otherwise you'd be asking the district court to say, well, wait, is the city not responding quickly enough to negotiations or is T-Mobile not? No, no. The district court plainly has a way to measure expeditiously. After all, if this were a zoning decision, I don't know how they would measure with how quickly it was done or properly it was done either. But the Act. Well, the FCC has actually adopted the clock. Okay. And they've adopted some standards that would that if we don't act, I believe, in about a six-month period, then they may have the right to go through. But your position is if they come to you and say, we'd really like to do this and we'd like you to get us, we'd like you to get us in the process so that this can get in front of the voters, you can say, eh, we're not interested. Of course. We have, and I don't think there's any dispute that the Act requires us to, well. Your position is you're like a private landowner. I mean, clearly we could say expeditiously, and I think the Court would have no objection to this, we could say expeditiously, we're not interested in leasing that property. But if the market participant doctrine applies, your answer to Judge Hurwitz would be no, right, because the statute isn't applicable to you. You're making decisions about your own property. Isn't that right? Your answer is no. And I'm comfortable with a no answer. I just, you don't, you seem to be reluctant to give it, which is why I keep asking the question. I'm not reluctant to give it at all. Can I ask, moving on from the market participant doctrine, if we say it doesn't apply here for one reason or another, then why doesn't Metro PCS say that you can't rely on Measure C? I mean, Metro PCS imposes an in writing requirement which requires a written answer based on substantial evidence. You're not going to get that with a vote under Measure C if there's a denial. So wouldn't we have to, if we get past the market participant doctrine, wouldn't we have to uphold the district court's determination? I think not, Your Honor. Well, I mean, the problem with the district court's ruling is trying to construe Measure C to be a zoning regulation and treating it as following the same kinds of procedures as a land use decision is normally made never can work for a referendum. So you would distinguish Metro PCS because Metro PCS says you've got to have a document that's supported by substantial evidence. Are you saying we should distinguish it? No. I think that if you look at, for example, the Anacortes decision, as well as the Ninth Circuit decision in Anacortes, as well as the Palos Verdes Estates decision, both those cases, the circuit explained that you take local law as it is. Well, I think the problem is the distinction. This is not a land use restriction. And, in fact, the California Supreme Court has held in cases that we've cited to the court that you cannot apply procedural requirements to a referendum requirement that you might apply to a normal land use decision where it was brought to the And there's a written record. We don't do that, obviously, in elections. And it just goes to the fact that it's not you cannot read this code section, 332C7, to apply to a referendum like this, particularly in the context of whether or not the city is going to make its property available. I'm sorry. No, go ahead. In your view, the referendum is irrelevant. In other words, in your view, the referendum is irrelevant because you don't think this applies to any decision by the city whether or not to lease its property. That is, if it costs $50,000. Sure. If it was a $50,000 structure and they came in and the city said not interested, you still think the statute doesn't cover it? Oh, absolutely. Okay. I mean, if the city council, if it's a $50,000 project, it's a very small project, it's not covered by Measure C, the city council says we don't want to do it, hey, we're just like any other landlord. We're entitled to make that decision. Counsel, you've used your time, and we've asked a lot of questions, so you can have a minute for rebuttal when the time comes. Thank you, Your Honor. We'll hear from T-Mobile. Mr. Fineman. May it please the Court, my name is Martin Fineman from Davis by Tremaine LLP, and I'm here on behalf of the appellee and cross-appellant T-Mobile West Corporation. There's just two facts that I would like to highlight.  The city formally notified T-Mobile that it was suspending T-Mobile's building permit and subjecting the project to this Measure C election in a letter from the city attorney of Huntington Beach dated July 23, 2009, and that's in the record at page 102. Among other things, it spelled out what the timeline would be for a Measure C election and proposed or indicated three alternatives, that it could go on the next regular municipal election in November of 2010, and we're talking about a letter that was sent in July of 2009. In other words, you won't do that. Counsel, why is this relevant? I'm following up, actually, on the questioning about the timing of this and whether there's a requirement to act expeditiously. Well, if there's a requirement to act expeditiously under the statute, it's 60 days, and this didn't meet the 60 days. But if that requirement doesn't apply, then it doesn't matter. So I'm interested in why, because this measure, or these two towers that weren't allowed to be constructed are on the city's own property, why doesn't the proprietary exception apply? Certainly, Your Honor. Well, this was not a proprietary action that the city was taking at all. Didn't your client enter into a site license agreement? That's correct. The city was acting like a lessor and had conditions, and you were paying rent and the whole? Right. There were three, at least, actions that occurred. One was we applied for and were granted wireless permits. Secondly, we entered into a lease with the city. The title of it is site license agreement. So why isn't that like a market participant action? It was its property. You had to get other permits, just like you would have done if you built on other private property, but they were licensing your use on their property. Right. I think there's two reasons why not. The first is the city didn't even purport to submit the lease to this Measure C election. They were submitting the permits, not the lease, to the election. Number two ---- I don't understand how that makes it non-proprietary. Because doesn't Measure C have to do with it's triggered by construction of something of a certain value? Yeah, I mean, that's right. Put aside how we got there as a technical matter. You want to build something on the city land. Right. You want the city to say yes. Right. Why can't they just say no in a famous term, without respect? Without respect, does the act say to them that they can't say no? If all they were doing was deciding, are we going to lease to T-Mobile or not? They could say no. I believe they could say no. Okay. Now could they say? Can they say we don't have the power? Now, given the size of your project, under local law, we don't have the power to say no. Well, we have the power to say yes by ourselves. So rather than just say no, which you concede we can do, we're going to be good guys. We're going to put this on the ballot so that you get a chance to get a yes. Are they liable for giving you a chance to get the yes? Well, that's not what's going on, though. What's going on is they're submitting the whole – they're not limited to acting in a proprietary capacity. They're not limited to saying, gee, is $3,000 a month enough or not. No. Whether or not you can build the structure. Whether or not you can build the structure. Right. You agree they could say at the beginning of it, consistent with the act, take your structures to someplace else. We don't want them on the beach. Right. We just won't give you a chance. Rather than that, as I understand this record, they're saying now that you've made clear how big your structures are and how much they will cost to erect, rather than just say no, we propose to ask the people because that's the only way we can say yes. And are you saying that's illegal? Yes, because they've gone beyond just acting in a proprietary capacity, and they've moved into land use regulation. Why is that true? Let's suppose that I am a private owner of a – let's say a golf course, but I'm a private owner. Right. Okay. And you come to me and say I want to put this facility at the edge where it won't bother anybody, and I say to you, well, I'm not sure because I'm not sure how my neighbors feel about it. That's really important to me. So only if I can get, you know, a majority of my adjoining neighbors to agree, I'll come back to you and say yes. Could I do that? Yes, I agree. Okay. So why couldn't – or what if I'm a corporation and I say, well, I want to ask everybody who's interested within the company to let me know, and maybe I'll say yes if they all think I'm wrong. Can they do that? If it's a private company, yes. Okay. So why can't the city acting in its proprietary capacity on its own property or property that it leases, leaving that potential ambiguity aside, why can't it say, well, we're not inclined to do it, but if the people that are interested in this, that is our citizens, disagree with our decision, we'll go ahead and acquiesce. Why can't they do that? Because it's – the way Measure C works is not in a comparable manner to what you're describing. What Measure C says is that if there's any kind of a structure on publicly owned or operated beaches or parks, then it needs to be approved both by the city council and in an election. It's broader speaking than that. The problem is that it's a private company. It is – it has an overtly regulatory, land-use regulatory – Well, how is that different than my golf course owner who says unless my shareholders agree and unless my neighbors agree, I don't let people build on the golf course? Right. No, I understand. But I think there's a simple answer to that, Your Honor. The Telecommunications Act, Section 332, anyway, C-7, does not purport to require private parties. Well, that's the question, though. That's exactly the question, because if the city is acting as a private party, then it doesn't apply. I mean, that's what our market participant doctrine says. Yes, but what they're doing here goes way beyond that. Well, I don't understand how they – tell me how. You keep saying it's a land-use regulatory decision. Right. But as I understand it, it's a yes or no decision. It's not – typically when you go in front of a zoning board, they say, well, you can do this, but you can't do that, or you can do that. But this is a question, do we want T-Mobile on our property or not? And the voters – the city – the city council could say no to you. You agree to that. The city council could say, go away. Don't talk to us. We hate you. We just won't lease schools. Okay. So I don't – or we just won't lease the beaches. Yes. Yes. So I don't understand – tell me why it becomes a land-use decision when the city council says, we're willing to propose that to the people that our ordinances tell us make the decision, but they're not us. They're another group. They're the voters. Why does it become the forbidden land-use decision then? The Measure C describes itself as being a land-use regulatory proposition. It describes that it controls, quote, development of city-owned or operated parks and beach lands. Well, but that's – I mean, every decision about whether to let you use land is a land-use decision. I mean, that was a zoning – Yeah. Is it a zoning decision? Yes. It's not generally applicable, right? I mean, it's applicable only to the city's property. And not all of the city's property. Yes. To specified areas of the city's property. Right. And it seems – and it doesn't even impose any policy goals or directions. It's purely a procedural step to get approval of the electorate. So I'm having – I'm struggling to see why that is not squarely within the market participant exception. Okay. The – well, the market participant exception is meant to be the city owns property or is a purchaser. Either way. And if it's acting solely in that capacity, then that falls under the market participant doctrine. And how do we tell whether it's acting solely in that capacity when it's making an up or down decision on a request to build something on its land? Well, the decisions of the Ninth Circuit spell that out. That's the Olympic pipeline case and the American trucking case, which have been described in the briefs. And they consistently have struck down similar, I would say, regulations, similar actions. So the pipeline case, the concern that the panel had was about safety issues. Right. Here we don't see anything in Measure C about safety issues. There's no policy goals at all expressed in Measure C. And the ATA case said that the port's actions was within the market participant doctrine. Some were, some were not. I think mostly were preempted. And I think one or more weren't preempted. So the way that the cases in this circuit have decided the issue is they have this twofold test, whether the challenged action essentially reflects the entity's own interest in efficient procurement of needed goods and services. So that's the first test. And that isn't what's going on here. What's going on here is an eminently land-use decision about how do we want to use our parks and beaches. It's not is this enough rent or not. It's a land-use decision that's being submitted. Scalia. Does that two-part test appropriately apply when the city, rather than entering into a market, is being asked to let somebody use their property? Oh, certainly. Why should it apply? You know, I understand the market participant theory to be, look, if you're going to go out as a government entity and participate in a market, well, you know, you're outside this portion of the Act. But I'm not sure why the theory ought to apply at all to decisions about whether to let other people use your own property. Sure. Well, I'm I understand our cases seem to suggest it should, but doesn't it want a sense to me? Okay. The cases do absolutely say it. The Olympic pipeline case was use of public rights of way, in other words, public property. Right. But rights of way are different under the Act. The Act has explicit provisions. It says you can't discriminatorily allow access to rights of way by different providers. Well, it says you can't deny a permit based on unreasonable discrimination between carriers. Yes. There's a long story that I don't think is really relevant to your question about access to the public right of way. But the other answer to your question is Well, in other words, in that case, they just couldn't say no without a reason. But go ahead. Give me the other answer. Well, so all I want to say there, too, though, is that the American trucking case is similar. In other words, that was also use of the port property. So whatever misgivings there may be, clearly the cases have said that it does apply. But the other reason that I would give you is when a city leases out or sells property, it's participating in a market the same as if it was buying a good or a service. I just don't think there's any You may be right. The difference in those other cases was that the city had already decided to enter into a market, rights of way, the port. And it was operating facilities in a commercial way. Here, you know, you want to Your real request is to use the city's land. But let me ask you the different question. Yes. Do you think Sprint Spectrum was wrongly decided? I'm sorry, I didn't hear you. Do you think the Second Circuit decision in Sprint Spectrum was wrongly decided? The Mills case. Yes, actually, I do think it was wrongly decided. So we would have to We'd create a circuit split if we followed your position. No, I don't think you need to. That's a very apt question. I think it can easily be distinguished. That had to do with an existing term in an existing lease as to one single piece of property. I was mentioning that there's two parts to the test about market participant. I didn't get to the second one. But the second one, you know, really sort of points this out. Mills can very easily be distinguished because it was not any kind of a policy sort of matter. It wasn't Well, there's no policy here, right? It's just that it goes to the voters. I mean, so the school district made a determination about placement on one school property. But presumably the school board could have decided, would decide other school issues as well on a case-by-case basis. Or maybe they had a policy about how many RFEs could be allowed on school property. I don't see why that would make a difference to the resolution. Sure. Policy actually has sort of a defined meaning in the context of this market participant doctrine. And it has to do with how narrow an issue we're talking about. And so Mills can be distinguished also for the reason that it just had to do with one lease for one building. Whereas Measure C, as we've talked about, applies across the board. Any kind of a piece of property that's beach or park now or in the future The South Coast Air Quality Management District case said the South Coast has this fleet rule that applies to all government entities and their cars and whatever. And we state it nevertheless, market participant doctrine applied. How is that one different? Well, I think it can be distinguished on the same grounds as mentioned. If you look at those two prongs or those two tests that this circuit applies, it would show that it was not an overarching type of a policy as Measure C embodies. And also that it wasn't having to do with the procurement of goods and services. Or that was. I'm sorry. That all. I've gotten myself back. This is not having to do with. We don't understand the market participant theory either. Thank you. You have exceeded your time. But if you have one wrap-up sentence, you may. Okay. I will use my wrap-up sentence for the cross appeal. I would just respectfully ask the Court. The cross appeal, of course, having to do with what the proper remedy was for the violation that was found in Section 332, whether it would be a remand or a weak intent injunction. And I would just ask you to look at two Ninth Circuit cases in that regard. One is the Anacortes case, which has been mentioned a number of times, where this Court specifically said that an injunction was the proper remedy. And the other is a case that actually hasn't much been discussed, called Kay v. City of Rancho Palos Verdes, which is at 504 F. 3rd, 803. Have you cited that in your papers? No. You know, I don't believe so. Excuse me. If you have not cited it in your papers, would you see the deputy clerk afterwards and leave that citation for the Court and for opposing counsel? Absolutely. I have one question. Why aren't we bound by the Supreme Court's decision in eBay v. Merck, which says no presumptions in injunction? It seemed like most of the cases you were citing were from before eBay came out. And eBay says we have to apply the four-prong test. Sure. Well, eBay, I think, in part, you know, is a substantive patent law decision. We've applied it much more broadly than that. Okay. I will say to you that the finding or the legal conclusion that injunction is the only allowable remedy under Section 332 has been applied by courts as recently as a month or so ago in another case involving Huntington Beach decided by Judge Snyder in the district court in Los Angeles and by numerous courts since the eBay case. Thank you, counsel. Yes. Thank you. And just to direct your attention, if you would look at footnote 12 in that case, I think you'll find that very enlightening. Thank you. Mr. Field, do you have some rebuttal time remaining? Very little, but we'll be very quick. You know, this case is much simpler than Sprint's Spectrum case, the American Trucking case, because in those cases what was the real issue was that the government was using its position over its own property arguably to try to regulate beyond its property. That's why, for example, in the Olympic Pipeline case, the circuit came down and said, you can't use your control over a seven-mile stretch of the pipeline to try to regulate the safety rules for the entire pipeline. That's not what's happening here. We're not trying to regulate anything. The voters in 1990 said, we are very concerned about the commercial development of our parks. We want our parks to be just that, parks. And so if you propose major commercial developments in our parks, we want to have a vote on that. There's no external regulatory impulse here that is going beyond the park. We're not trying to regulate, just like in Sprint's Spectrum, the school district was not trying to regulate the radio transmission standards for Sprint's antennas throughout the city, throughout the region. They were just dealing with their single site. Thank you, counsel. Thank you. You've used your time, and we appreciate very much the arguments of both counsel. This is a challenging and interesting case, and it is submitted, and we will stand adjourned for this session.
judges: Graber, Ikuta, Hurwitz